UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND WATTS,                              Case No. 16-10552

           Plaintiff,                    Robert H. Cleland
v.                                          United States District Judge

MORTGAGE BRIDGE SOLUTIONS, LLC,             Stephanie Dawkins Davis
*et al*,                                    United States Magistrate Judge

           Defendants.
_____/

## REPORT AND RECOMMENDATION
## MOTION FOR JUDGMENT ON THE PLEADINGS (Dkt. 10)

## I.   PROCEDURAL HISTORY

Defendants filed a motion for judgment on the pleadings on April 15, 2016.

(Dkt. 10).  Judge Cleland referred this motion to the undersigned for report and

recommendation on May 3, 2016.  (Dkt. 11).  Plaintiffs filed a response on June 6,

2016 and defendants filed their reply on June 24, 2016.  (Dkt. 15, 17).  On October

6, 2016, the parties filed their joint statement of resolved and unresolved issues.

(Dkt. 22).  Pursuant to notice, the hearing in this matter was held October 20,

2016.  (Dkt. 21).

For the reasons set forth below, the undersigned **RECOMMENDS** that

defendants' motion for judgment on the pleadings be **GRANTED** in its entirety.

## II.    FACTUAL BACKGROUND

This matter involves real property previously owned by plaintiffs Raymond and Royce Watts, and commonly known as 443 Bentley St., Lapeer, Michigan (the "Property"). (Dkt. 1-2, Complaint ¶ 4).[1]  On March 29, 2007, as security for a promissory note in the amount of $135,000.00 (the "Note") payable to First Indiana Bank ("First Indiana"), plaintiffs granted a Mortgage on the Property to First Indiana, which was recorded on April 18, 2007 in Lapeer County Register of Deeds (the "Mortgage").  (Dkt. 10, Ex. A, Note; Ex. B, Mortgage; Dkt. 1-2, Complaint, ¶¶ 10-12).  According to defendants, the Mortgage was assigned to defendant Mortgage Bridge Solutions.[2]  (Dkt. 10, Ex. C).  Defendant Carrington Mortgage Services is the servicing agent for Mortgage Bridge Solutions.

Plaintiffs eventually defaulted on their obligations under the Mortgage. (Dkt. 1-2, Complaint, ¶ 18).  As alleged in the Complaint, plaintiffs assert that they sought a loan modification and submitted documents and information in order to be considered.  (Dkt. 1-2, Complaint, ¶¶ 41-50).  Plaintiffs allege that

_____

[1]  While there are several exhibits referenced in the Complaint, they are not actually attached to the copy on the docket, which is part of the Notice of Removal.  Those exhibits are as follows: (1) Warranty Deed Information from Register of Deeds; (2) Mortgage Information from Register of Deeds; (3) First Assignment of Mortgage Information from Register of Deeds; (4) 2d Assignment of Mortgage Information from Register of Deeds; (5) Sheriff's Deed Information from Register of Deeds; and (6) Foreclosure Notice.  (Dkt. 1-2).

[2]  According to Dkt. 10-4, the assignee is Headlands Asset Management Fund III, Series C, LP.  (Dkt. 10-4, Pg ID 186).

2

defendants promised them a permanent loan modification, but that defendants never followed through on the promise. *Id*. Defendants deny that they promised to modify the loan terms, and it is undisputed that the parties never entered a modification. According to defendants, the plaintiffs' inability to cure their default or to work out an alternative arrangement led to Mortgage Bridge foreclosing on the property. (Dkt. 5-3, Notice of Incomplete Loss Mitigation Application notice dated January 12, 2015; Dkt. 5-7, Foreclosure Notice dated April 12, 2015). The foreclosure was followed by the posting of a notice on the Property identifying a default and scheduling a sheriff's sale. (Dkt. 10, Ex. D, Sheriff's Deed; Dkt. 1-2, Complaint, ¶ 16). The same notice was published in a Lapeer County newspaper for four consecutive weeks beginning on April 12, 2015. (Dkt 1-2, Complaint, ¶¶ 23, 30; Dkt. 10, Ex. D, Sheriff's Deed, at p. 4). Despite acknowledging these notices in their Complaint (Dkt. 1-2, Complaint, ¶¶ 23, 61), plaintiffs claim they never saw them and were unaware of the foreclosure sale having been scheduled. (Dkt. 1-2, Complaint, ¶¶ 28-30).

The sale was initially adjourned, but finally occurred on June 17, 2015. Mortgage Bridge Solutions purchased the Property at the sheriff's sale for $89,900, and a Sheriff's Deed reflecting the same was recorded on June 25, 2015, Lapeer County Register of Deeds. (Dkt. 10, Ex. D, Sheriff's Deed). The redemption period was set to expire on December 17, 2015. (Dkt. 10, Ex. D,

Sheriff's Deed, p. 5). Plaintiffs filed their Complaint challenging the foreclosure on December 17, 2015 in the Lapeer County Circuit Court. Plaintiffs filed their Complaint before the purported expiration of the redemption period in an attempt to resolve this matter and requested among other relief, the setting aside of the Sheriff's Deed and an evaluation for a loan modification. Defendants removed this case to Federal Court on February 16, 2016 based on federal question and supplemental jurisdiction. (Dkt. 1).

## III. ANALYSIS AND CONCLUSION

### A. <u>Standard of Review</u>

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007), quoting, *Twombly,* 550 U.S. at 555 (citations and internal quotation marks omitted). And, while a complaint need not contain "detailed" factual allegations,

its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.,* quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Thus, it is permissible to consider, in the context of a motion to dismiss, documents such as those relating to the mortgage transaction, assignment, and foreclosure because they are referenced in plaintiffs' complaint and are central to their claims. *Allen v. International Truck & Engine Corp.*, 2010 WL 749655, *2 (S.D. Ohio 2010); *see also Havenick v. Network Exp., Inc.*, 981 F.Supp. 480 (E.D. Mich. 1997) ("[T]he Court may properly consider, for the purposes of a Motion under Fed.R.Civ.P. 12(b)(6), the entirety of documents which Plaintiffs rely upon and quote in their Complaint

5

without transforming the Motion into one for Summary Judgment."); *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (when "a document is referred to in the complaint and is central to the plaintiff's claim ..., the defendant may submit an authentic copy to the court to be considered on a motion to dismiss."); *Crofton v. Bank of America Home Loans*, 2011 WL 1298747, *3 (E.D. Mich. 2011) (A court may also consider "matters of public record," such as documents recorded with the Register of Deeds when considering a motion to dismiss under Rule 12(b)(6)); *Bundy v. Federal Nat. Mort. Ass'n.*, 2011 WL 977531, *2 (E.D. Mich. 2011) (Given that the "the loan applications, mortgages, and notes attached to defendants' motion" were referred to in the complaint and were central to plaintiff's claims, they "are considered part of the pleadings, and the Court's consideration of these documents does not convert a motion to dismiss into one for summary judgment.").

When deciding a state law claim based on supplemental jurisdiction, a federal court is "bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999). In diversity cases, this Court is required to apply state law in accordance with the controlling decisions of the Michigan Supreme Court. *NAS Sur Group v Cooper Ins. Ctr., Inc.*, 617 F.Supp.2d 581 (W.D. Mich. 2007); *Erie R R Co. v. Tompkins*, 304 U.S. 64 (1938); *Bailey Farms,*

*Inc v. NOR-AM Chem Co.*, 27 F3d 188, 191 (6th Cir. 1994).  If the state Supreme

Court has not yet addressed the issue presented, this Court must predict how it

would rule, by looking to "all available data," including state appellate decisions.

*Safeco Ins. Co. of Am. v. CPI Plastics Group, Ltd.*, 625 F.Supp.2d 508 (E.D. Mich.

2008); *Kingsley Associates, Inc.v. Moll Plastic Crafters*, *Inc*, 65 F.3d 498, 507

(6th Cir. 2000).

      B.    <u>Count I - Wrongful Foreclosure</u>

      In Count I, plaintiffs allege that defendants failed to comply with the

foreclosure process as set forth in Mich. Comp. Laws § 600.3201 *et seq*, the

Foreclosure of Mortgages by Advertisement Statute, as well as violating the Real

Estate Settlement Procedures Act ("RESPA") 12 U.S.C. § 2605 *et seq*; Regulation

X, 12 C.F.R. 1024.41; and Regulation Z, 24 C.F.R. § 3500.  (Dkt. 1-2, Complaint,

¶¶ 53-88).  Defendants maintain, however, that plaintiffs' wrongful foreclosure

claim fails for several reasons.

      1.    Redemption Period

      First, defendants assert that even if plaintiffs were found to have stated a

claim in the wrongful foreclosure count sufficient to otherwise survive a motion

under Fed.R.Civ.P. 12(c), there would still be no basis to set aside the sheriff's

sale because the redemption period has expired.  Defendants advance that it is

well-settled under Michigan law that a former property owner loses all right, title

and interest in a property once the redemption period for that property expires following a foreclosure sale. "Once the redemption period expired, all of plaintiff's rights in and title to the property [are] extinguished." *Overton v. Mortgage Electronic Registration Systems*, 2009 WL 1507342, at *1 (Mich. App. 2009). Moreover, the filing of a lawsuit before the redemption deadline does not toll the redemption period. *Id.* at *1 ("Although he filed his suit before the redemption period expired, that was insufficient to toll the redemption period."). The Michigan Court of Appeals recently reaffirmed this rule in a when it held that "by failing to redeem the property within the applicable time, plaintiff lost standing to bring her claim." *Bryan v. JP Morgan Chase Bank*, 304 Mich. App. 708, 715 (2014). Defendant contends that this means a former owner is precluded from challenging a foreclosure sale after the redemption period for the property expires.

In this case, plaintiffs failed to exercise their redemption rights, and the redemption period expired the day after they filed their Complaint. Since the redemption period has expired, defendants argue that plaintiffs must show that they were somehow prejudiced (a fact that plaintiffs have not alleged), by the alleged failure to follow the foreclosure by advertisement statute. "To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's

8

noncompliance with the statute." *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115-116 (2012).

In a recent Michigan Court of Appeals decision referencing *Kim*, the Court specifically identified "three essential aspects" a mortgagor must allege to support a claim to challenge a foreclosure by advertisement: "(1) fraud or irregularity in the foreclosure procedure; (2) prejudice to the mortgagor; and (3) a causal relationship between the alleged fraud or irregularity and the alleged prejudice, i.e., that the mortgagor would have been in a *better position to preserve the property interest absent the fraud or irregularity.*" *Diem v. Sallie Mae Home Loans, Inc.*, 307 Mich. App. 204, 210-11 (2014). Defendants maintain that plaintiffs cannot establish fraud, prejudice, or a causal relationship. First, plaintiffs were provided with all notices. (Dkt. 10, Ex. D). Second, plaintiffs have not alleged any facts to suggest that defendants engaged in fraud, that the foreclosure was anything other than standard, or that they suffered prejudice as a result of the defect. Third, plaintiffs have not alleged that they would have been in a better position to preserve their interest in the Property absent any alleged error by defendants. Thus, according to defendants, there is no basis to request that the Sheriff's Deed be set aside.

In response, plaintiffs assert that they can challenge the foreclosure of their home after the purported expiration of the redemption period. Plaintiffs say that

defendants' argument is akin to a standing argument, and assert that whether a party has standing to sue is a question of law. *Glen Lake-Crystal River Watershed Riparians v. Glen Lake Ass'n*, 264 Mich. App. 523, 527 (2004). Plaintiffs also argue that notwithstanding cases cited by defendants, the Michigan Supreme Court has allowed a foreclosure by advertisement to be challenged on numerous occasions after the redemption period has ended. *See e.g.*, *Manufacturers Hanover Mortgage Corp v. Snell*, 142 Mich. App. 548 (1985) (citing *Reid v. Rylander*, 270 Mich. 263 (1935); *Gage v. Sanborn*, 106 Mich. 269 (1895)). Moreover, as recently as earlier this year, the Sixth Circuit has ruled that a homeowner who is challenging a foreclosure after the expiration of the redemption deed has standing to do so. *See Hurst v. Fannie Mae*, 642 Fed.Appx. 533 (6th Cir. 2016). Defendants admit that plaintiffs entered into the Loan and Mortgage transaction with the Mortgagee and, according to plaintiffs, this gives them the legal capacity to sue on a breach of contract theory. Plaintiffs also point out that when they filed their Complaint, the redemption period had not expired and they were still the fee simple owners of the property, meaning they were well within their rights to bring the instant action.

A mortgagor generally has six months after the date of the sheriff's sale to redeem his property. Mich. Comp. Laws § 600.3240(8). After that point (or whatever redemption period applies), the mortgagor's "right, title, and interest in

10

and to the property" are extinguished. *Piotrowski v. State Land Office Bd.*, 302
Mich. 179, 187 (1942); *Conlin v. Mortgage Elec. Registration Sys.*, 714 F.3d 355,
359 (6th Cir. 2013); Mich. Comp. Laws § 600.3236. Michigan courts have held
that once the redemption period expires, a property owner may challenge a
foreclosure sale only by making "a clear showing of fraud, or irregularity."
*Schulthies v. Barron*, 16 Mich. App. 246, 248 (1969). Additionally, the stated
fraud or irregularity "must relate to the foreclosure procedure itself." *El-Seblani v.
Indymac Mortg. Services*, 510 Fed.Appx. 425, 429 (6th Cir. 2013). This standard
is a high one. *Conlin*, 714 F.3d at 360. "The Michigan Supreme Court has held
that it would require a strong case of fraud or irregularity, or some peculiar
exigency, to warrant setting a foreclosure sale aside" after the redemption period
expires. *Sweet Air Inv., Inc. v. Kenney*, 275 Mich. App. 492, 497 (2007) (quoting
*United States v. Garno*, 974 F.Supp. 628, 633 (E.D. Mich. 1997)) (citing *Detroit
Trust Co. v. Agozzinio*, 280 Mich. 402, 405-06 (1937) and *Calaveras Timber Co.
v. Michigan Trust Co.*, 278 Mich. 445, 450 (1936)).

As the Sixth Circuit recently stated, "[w]hether the failure to make this
showing is best classified as a standing issue or as a merits determination, one
thing is clear: a plaintiff-mortgagor must meet this 'high standard' in order to have
a foreclosure set aside after the lapse of the statutory redemption period." *Conlin*,
714 F.3d at 359-60. Here, there is no question that the redemption period has

11

expired.  Thus, to the extent plaintiffs' complaint seeks to challenge any portion of the foreclosure proceeding, they can only do so by making a strong showing of fraud or irregularity.  None of the allegations in her complaint meet this standard, as discussed below.

> 2.   Michigan law

Defendants assert that there is no factual basis to support plaintiffs' claim for wrongful foreclosure under Michigan law.  Plaintiffs allege that Defendants failed to (a) provide a Notice of Default (Dkt. 1-2, Complaint, ¶ 56) and (b) failed to publish a notice of adjournment of the foreclosure sale (Dkt. 1-2, Complaint, ¶ 64).  Defendants assert that, even if true, these allegations are immaterial because: (a) Plaintiffs defaulted on their obligations under the Mortgage and they knew they were in default (Dkt. 1-2, Complaint, ¶¶ 18-19); (b) no other action had been instituted to recover the debt, which plaintiffs do not deny; (c) the Mortgage was properly recorded and contained a power of sale.  (Dkt. 10, Ex. B, ¶ 12); (d) Mortgage Bridge Solutions is the mortgagee of record and Carrington is the servicing agent as evidenced by the recorded Mortgage (Dkt. 10, Ex. B) and subsequent Assignment (Dkt. 10, Ex. C); and (e) the required notices of the foreclosure were posted and published in accordance with Mich. Comp. Laws § 600.3208 and Mich. Comp. Laws § 600.3212.  (Dkt. 10, Ex. D, Sheriff's Deed, pp. 3-4). Therefore, according to defendants, the non-judicial foreclosure by

advertisement complied with Michigan law, and plaintiffs cannot identify any legal basis to suggest otherwise.

The Court notes that plaintiffs do not really address the notice of default issue or otherwise explain in the response brief how the foreclosure process violated Michigan law under the foreclosure by advertisement statute.  While plaintiffs claim that the required notices were not provided, those bare allegations are not sufficient as recently explained by Judge Borman in *Radske v. Federal National Mortgage Ass'n*, 2016 WL 3667957, *3 (E.D. Mich. 2016).[3]  In *Radske*, the plaintiff alleged that the defendants failed to provide the proper statutory notices because he "did not see" or "never saw" the published notices or the notice posted on the Property. Yet, as Judge Borman pointed out, "[t]hese claims are belied by the affidavits attached to the Sheriff's Deed which provide that the notice of foreclosure was properly published for four weeks ... and posted on the Property on March 27, 2015." *Id*.  Similarly, defendants in this case have provided evidence, including five separate affidavits, evidencing posting and publication.  (Dkt. 10-5, Pg ID 195-196).  Judge Borman explained that such affidavits are "presumptive evidence" that the notices were provided.  *Radske*, at *3 (quoting Mich. Comp. Laws § 600.3264); *see also Garrow v. JPMorgan Chase*

---

[3] Notably, the complaint in *Radske* was filed by the same attorney as the complaint in this case and is virtually identical to the complaint at issue here.

*Bank, N.A.*, 2016 WL 2894066, at *4 (E.D. Mich. Apr. 27, 2016), report and

recommendation adopted, 2016 WL 2866410 (E.D. Mich. May 17, 2016).[4]

Thus, just as in *Radske*, plaintiffs' claims that they "never saw" the posted

notice of sale or the publications (Dkt. 1-2, Pg ID 11, ¶¶ 29-30) do not create a

plausible claim of wrongful foreclosure pursuant to § 600.3201.  *Radske*, at *3,

(citing *Derbabian v. Bank of Am., N.A.*, 587 Fed.Appx. 949, 956 (6th Cir. 2014)

(holding that the bare assertion that the defendant failed to give "required notices"

did not meet the pleading standards of Fed.R.Civ.P. 8, and "[m]ore importantly,

the sheriff's deed reflecting the foreclosure sale shows that the [plaintiffs] were

given the statutorily required notices.")).  Also, it is clear that defendants provided

a notice of default to plaintiffs (Dkt. 5-2) and plaintiffs do not explain how any

failure to publish the adjournment of the foreclosure sale violates Michigan law.

Thus, this claim is barred precisely for the reasons set forth in *Radske*.

3.     RESPA/Regulation X

Next, defendants assert that plaintiffs' wrongful foreclosure claims based on

alleged RESPA/Regulation X violations are without merit.  (Dkt. 1-2, Complaint,

¶ 69).  Defendants deny the allegations of wrongdoing, but also assert that

plaintiffs fail to state a viable cause of action because the relief they request is not

---

[4] *Garrow* involves another nearly identical complaint filed by plaintiff's attorney, David Lutz.

14

available to them under RESPA.  Plaintiffs seek to rescind the sheriff's sale and to

negotiate a loan modification.  (Dkt. 1-2, Complaint, Count I – Relief Requested).

However, according to defendants, the remedies available under RESPA are

limited to actual monetary damages, not equitable relief.  12 U.S.C. § 2605(f)(1);

*see also*, *Servantes v. Caliber Home Loans*, *Inc*, 2014 WL 6986414, *1 (E.D.

Mich. Dec. 14, 2014) (dismissing RESPA/Regulation X claims "because the

principal relief sought by Plaintiffs—to stay or set aside the sheriff's sale or,

alternatively, to permit the matter to proceed to judicial foreclosure—is

unavailable to them under RESPA.").

Defendants also maintain that even if plaintiffs were to construe their claim

as a request for damages, the claim still fails because plaintiff has failed to allege

actual damages.  *Servantes v. Caliber Home Loans, Inc.*, 2014 WL 6986414,*1

(E.D. Mich. Dec. 14, 2014) ("Plaintiffs have not alleged that Defendant's alleged

violations of 12 C.F.R. § 1024.39-41 resulted in actual damages, [and] Plaintiffs

have not pled 'a pattern or practice of noncompliance.'"); *Caggins v. Bank of New

York Mellon*, 2015 WL 4041350, at *2 (E.D. Mich. July 1, 2015) ("To the extent

Plaintiff intends to state a RESPA claim for monetary damages, the court

dismisses the claim because Plaintiff does not allege any facts which would

establish actual damages or a pattern or practice of noncompliance.").

Additionally, to the extent plaintiffs' Regulation X claim includes a claim

15

for violation of 12 C.F.R. 1024.39(a) for allegedly failing to make good faith efforts to contact plaintiffs (Dkt. 1-2, Complaint, ¶ 68), defendants argue that plaintiffs have no viable cause of action. Under Regulation X, a borrower is only permitted a private cause of action for a violation under § 1024.41, which specifically provides that "[a] borrower may enforce the provisions of this section . . . ." 12 C.F.R. § 1024.41(a). Yet, as defendants point out, the other sections of Regulation X <u>do not</u> provide for a private cause of action. *See Schmidt v. Pennymac Loan Services*, 2015 WL 2405571, * 6-11 (E.D. Mich. May 20, 2015) (holding a private cause of action under Section 1024.40 was not available to a borrower).

In addition, plaintiffs' claim for violation of 12 U.S.C. § 2605(b)(1) (Dkt. 1-2, Complaint, ¶¶ 94-96) only applies to notices required for a transfer of the loan servicing. Here, defendants point out that there is no dispute that defendant Carrington Mortgage Services serviced the loan and plaintiffs do not allege that there was a servicing transfer during the times at issue in this matter. (Dkt. 1-2, Complaint, ¶ 15). Moreover, defendants posit that it is undisputed that defendant Carrington provided plaintiffs with a Notice of Servicing Transfer which was effective September 8, 2014. (Dkt. 5, Answer, Ex. D). To the extent plaintiffs argue that defendants failed to provide a notice of default (*see* Dkt. 1-2, Complaint, ¶¶ 56-57), defendants assert that such allegations fail as a matter of

16

law because defendants provided plaintiffs with a Notice of Default dated

February 23, 2015.  (Dkt. 5, Ex. A).

Similarly, plaintiffs' allegations regarding defendants' purported failure to

provide loss mitigation notices fail because plaintiffs did not submit a complete

loss mitigation request and subsequently defaulted under a forbearance agreement.

(Dkt. 5, Exs. B and C, Incomplete Loss Mitigation Application notice dated

January 12, 2015 and Default Letter Under Forbearance Agreement dated June 1,

2015).  According to defendants, all of these documents, which are part of the

pleadings, demonstrate that plaintiffs' allegations regarding a purported lack of

default notice and loss mitigation notices are wholly lacking in merit.

According to defendants, it is well-established that defendant Carrington

was under no legal obligation to offer a loan modification.  "Nothing in [section]

1024.41 imposes a duty on a servicer to provide any borrower with any specific

loss mitigation option." 12 C.F.R. 1024.41(a); *see also*, *Hart v. Countrywide

Home Loans, Inc*, 735 F.Supp.2d 741, 748 (E.D. Mich. 2010) (holding that "even

if Plaintiff were eligible for modification, there would be no duty imposed on

Defendant for which Plaintiff could seek relief.").  Thus, defendants maintain that

even if the foreclosure was "wrongful," plaintiffs have no basis to be entitled to a

loan modification as a remedy and the RESPA claim fails as a matter of law.

In response, plaintiffs counter that the errors in the foreclosure process

17

entitle them to have the foreclosure sale set aside. To support this claim, plaintiffs rely primarily on *Houle v. Green Tree Servicing*, 2015 WL 1867526 (E.D. Mich. 2015), in which Judge Steeh stated that, "[b]orrowers have a private right of action against lenders who evaluate a loss mitigation application while at the same time pursuing foreclosure." The *Houle* opinion also clarified that 12 C.F.R. 1024.41 allows the recovery of actual damages resulting from a servicer's failure to follow the rule, plus the borrower's costs and attorney fees incurred in bringing the action. *Id.* Plaintiffs maintain that defendants initiated foreclosure proceedings and sold their home before fully and fairly reviewing and evaluating plaintiffs' loan modification application.

The Court observes, however, that in *Houle*, the court also explained that nothing in § 1024.41 requires a servicer to provide a borrower with any particular loss mitigation option, and a servicer is only required to follow the procedures described in the loss mitigation rule for a single complete loss mitigation application. *Houle*, at *3. Here, plaintiffs do not appear to allege in the complaint that they actually provided a complete loss mitigation application. In the documents attached to the answer, it appears that defendants informed plaintiffs on January 12, 2015 that their loss mitigation (loan modification) application was incomplete. (Dkt. 5-3). It appears that plaintiffs subsequently submitted a request for forbearance, as evidenced by a letter from defendants dated June 1, 2015,

18

rejecting that request based on the reason that the "borrower breached terms of repayment plan." (Dkt. 5-4). Plaintiffs cannot now "bring an action for violation of the loss mitigation rule if the borrower has previously availed himself of the loss mitigation process." *Brimm v. Wells Fargo Bank, N.A.*, 2016 WL 3522315, at *5 (E.D. Mich. June 28, 2016), (quoting *Houle*, at *3).

Moreover, in any event, *Houle* has been interpreted to not provide any support for plaintiffs' claims (specifically, identical claims brought by plaintiffs' attorney, David Lutz). *See e.g.*, *Hogan v. Visio Fin. Servs., Inc.*, 2015 WL 3916084, at *3-4 (E.D. Mich. June 25, 2015):

> In his response, Hogan cites *Houle v. Green Tree Servicing*, 2015 U.S. Dist. LEXIS 53414, at *6, 2015 WL 1867526 (E.D. Mich. Apr. 23, 2015), for the general proposition that "[b]orrowers have a private right of action against lenders who evaluate a loss mitigation application while at the same time pursuing foreclosure." While this general statement may be true, it is inapposite here; as the *Houle* court recognized, a plaintiff's request to invalidate a foreclosure sale is not a remedy which is available under RESPA. *Houle*, 2015 U.S. Dist. LEXIS 53414, at *8-9, 2015 WL 1867526. In other words, Houle supports Visio's argument, not Hogan's.
>
> Further relying on *Houle*, Hogan asserts that "12 C.F.R. [§ ] 1024.41 allows the recovery of actual damages from a servicer's failure to follow the rule, plus the borrower's costs and attorney fees incurred in bringing the action." [12 at 8]. But, as stated above, Hogan has not demonstrated his entitlement to money damages because he fails to allege what his damages are, and to the extent there are any, how they might be traceable to Visio's

> conduct. As a result, Hogan's claim for wrongful
> foreclosure under RESPA should be dismissed.

*Id*. Thus, the undersigned concludes, just as other courts in this district have

concluded, that plaintiffs' RESPA claims fails as a matter of law.

### 4. TILA/Regulation Z

Defendants next assert that plaintiffs' claim under the federal Truth in

Lending Act (TILA), 15 U.S.C. § 1601, *et seq*, and Regulation Z must also fail.

TILA's Regulation Z identifies two specific events that extinguish a borrower's

right to rescind: (1) the "transfer of all of the consumer's interest in the property"

or (2) the "sale of the property." *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760

(7th Cir. 2006). Further, "after a foreclosure sale, a mortgage is extinguished and,

thus, even in a redemption state like Michigan, an unexpired TILA right to rescind

the mortgage is likewise terminated." *Williams v. G.M. Mortgage Corp.*, 2004 WL

3704081 (E.D. Mich. 2004). Accordingly, defendants assert that plaintiffs' claim

in this regard fails as a matter of law.

Plaintiffs do not address this claim in the response brief. At the hearing, the

Court attempted to clarify whether plaintiff brings a TILA claim for rescission

(which is not mentioned in the complaint) or whether plaintiffs seek damages only.

Counsel indicated that plaintiffs seek rescission and damages for the costs of

moving, missing work, and the increased costs associated with obtaining a new

home loan based on their poor credit rating.

The Court will address each possible TILA claim in turn. Section 226.23(a)(3) of Regulation Z provides that the right to rescind a consumer credit transaction extends to three years after consummation of the transaction only if the required notice of the right to rescind or material disclosures are not made to the consumer. However, Regulation Z *does not* include the disclosure of an assignment on its list of material disclosures. *Robertson v. US Bank, N.A.*, 2015 WL 12532148, *13 (W.D. Tenn. Oct. 20, 2015), aff'd sub nom. 831 F.3d 757 (6th Cir. 2016) (citing 12 C.F.R. §§ 226.23(a)(3); 226.32(c); (d); 226.35(b)(2)). Thus, defendants correctly point out that plaintiffs' TILA claim for rescission was extinguished by the sale of the property:

> (3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.

12 C.F.R. § 226.23(a)(3) (emphasis added). "This provision goes beyond the standard statute of limitations, extinguishing not only the plaintiffs' ability to

21

bring a lawsuit but also their 'underlying right' to rescind the transaction.

*Chapman v. JPMorgan Chase Bank, N.A.*, 2016 WL 3209501, at *3 (6th Cir. June

10, 2016) (citing *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417 (1998)).

As indicated above, plaintiffs' complaint does not actually set forth a claim

for rescission. Rather, they only assert a claim for damages under 15 U.S.C.

§ 1640(a)(1) and 15 U.S.C. § 1640(a)(2)(A)(iv). (Dkt. 1-2, Pg ID 18). Thus, the

Court is left with a situation where defendants did not move to dismiss the claim

actually asserted and plaintiffs did not provide any briefing to support either

theory of recovery under TILA. As set forth above, the rescission claim plainly

fails. As to the damages claim, it appears to the Court to be barred by the statute

of limitations. The assignment was recorded on September 8, 2014. (Dkt. 10-4,

Pg ID 186). This lawsuit was filed in December of 2015. (Dkt. 1-2). The

limitations period for a damages claim under § 1641 is one year. *See Radske*, at *5

(citing 15 U.S.C.A. § 1640(e)). Thus, any TILA claim for damages is barred by

the statute of limitations and must be dismissed along with any TILA claim for

rescission.

C.    Count II - Fraudulent Misrepresentation

According to plaintiffs' Count II, their theory of fraud is based on a general

allegation that plaintiffs were not informed of the available loss mitigation

alternatives. (Dkt. 1-2, Complaint, ¶ 76). Defendants contend that this claim fails

as a matter of law.  Under Michigan law, a claim of fraud requires:

> (1) That defendant made a material misrepresentation;
> (2) that it was false; (3) that when he made it he knew
> that it was false, or made it recklessly, without any
> knowledge of its truth, and as a positive assertion; (4)
> that he made it with the intention that it should be acted
> upon by plaintiff; (5) that plaintiff acted in reliance upon
> it; and (6) that he thereby suffered injury. Each of these
> facts must be proved with a reasonable degree of
> certainty, and all of them must be found to exist; the
> absence of any one of them is fatal to recovery.

*Hi-Way Motor Co v. Int'l Harvester Co*, 398 Mich. 330, 336 (1976).  Defendants

argue that plaintiffs' fraud claim is not stated with any particularity.  Rather,

plaintiffs simply assert that defendants made false promises about holding off on

foreclosure proceedings.  (Dkt. 1-2, Complaint, ¶ 90).  However, plaintiffs do not

allege any specific misrepresentations, and do not state how they relied on any

misrepresentations except to state that they were somehow induced to "refrain

from defending the foreclosure."  (Dkt. 1-2, Complaint, ¶¶ 93-94).  Defendants say

that this allegation cannot be true because all required notices about defendants'

intent to proceed with the foreclosure were timely posted and published.  (Dkt. 10,

Ex. D, Sheriff's Deed).

Defendants also argue that plaintiffs' general allegations of

misrepresentation concern future conduct about the possibility of a modification or

a foreclosure, which cannot form the basis of a fraud claim.  *See Forge v. Smith*,

458 Mich. 198, 212 (1998) ("A promise regarding the future cannot form the basis of a misrepresentation claim"). Furthermore, if plaintiffs have a plausible basis for alleging that defendants failed to live up to these alleged commitments, the proper remedy lies in contract—not fraud. "[I]n a contractual setting, a tort action must rest on a breach of duty distinct from the contract . . . ." *Siecinski v. First State Bank of East Detroit*, 209 Mich App 459, 465 (1995). Michigan law bars a plaintiff from recovering in tort for alleged breaches of a duty assumed only by contract. *See Fultz v. Union Commerce-Assoc.*, 470 Mich. 460, 467 (2004). In this case, the Mortgage defines the rights and obligations of the parties. Thus, defendants contend that plaintiffs do not have a basis to assert a tort claim in light of the contractual relationship.

Defendants also point out that the statute of frauds requires that agreements with financial institutions be in writing and signed before they can be enforced. Mich. Comp. Laws § 566.132; *see also*, *Hart*, at 749 ("Defendant's alleged statement [that it would review plaintiff's mortgage for modification] would be a promise to conduct a review in the future and cannot give rise to a viable misrepresentation claim."). According to defendants, since plaintiffs do not allege that there is an agreement in writing and signed with an authorized signature relating to any purported promise to modify the loan or forbear (other than the forbearance agreement they admittedly defaulted under), plaintiffs' fraud claim

24

fails.

Plaintiffs contend, in contrast, that defendants, with an intention to defraud them, made material misrepresentations that loss mitigation assistance as an alternative to foreclosure was available to plaintiffs to save their home from foreclosure. They further aver that defendants had knowledge that these representations were false, and that defendants nevertheless induced plaintiffs to believe that their loan modification application was under consideration. According to plaintiffs they refrained from defending against the foreclosure in reliance on the defendants' misrepresentation. As a result, plaintiffs' home was sold at sheriff sale causing plaintiffs irreparable injury. Thus, plaintiffs insist that they have sufficiently pleaded the elements of fraud in order to survive the present motion.

Plaintiffs further alleged that they initiated loan modification proceedings by working with defendants on modification negotiations and that plaintiffs' requests for a modification were apparently denied. Plaintiffs maintain that these facts are specific and rise above the level of conclusory allegations. Accordingly, if this Court accepts them as true, then defendants failed to meet their requirement of offering in good faith a loan modification program. *See Jarchow v. CitiMortgage, Inc.*, 2014 WL 1759074 (E.D. Mich. May 2, 2014). Plaintiffs maintain that they have pleaded allegations that are sufficiently specific to state a

claim and to put defendants on notice of the claim.

Plaintiffs also deny that the statute of frauds is applicable here. Rather, according to plaintiffs, a contract to make a subsequent contract is not *per se* unenforceable - particularly where a claim of promissory estoppel is made. 1 Corbin, Contracts, § 29, p 84; *see Hansen v. Catsman*, 371 Mich 79 (1963). "Application of the doctrine of promissory estoppel is based on the particular factual circumstances of a case and, as an equitable remedy, is employed to alleviate an injustice resulting from strict adherence to established legal principles, such as those underlying the statute of frauds." *Crest Uniform Co v. Foley*, 806 F.Supp. 164, 169 (E.D. Mich. 1992) (citing *Hebrew Teachers v. Jewish Welfare*, 62 Mich. App. 54, 60 (1975)). Further, "[w]here a defense under a statute of frauds is raised, the rule is that one must have acted to his detriment solely in reliance on the oral agreement." *Id*. Thus, "[p]romissory estoppel, if established, can be invoked to defeat the defense of the statute of frauds." *McMath v. Ford Motor Co*, 77 Mich.App. 721, 725 (1977) (citing 3 Williston on Contracts (3d ed), § 553A, p 796). Further, "[w]here a plaintiff alleges promissory estoppel to circumvent the statute of frauds, a question of fact is raised which must be resolved at trial by the trier of fact." *Crest Uniform*, at 169-170.

Plaintiffs maintain that the following allegations sufficiently support application of promissory estoppel and thus, defeats the statute of frauds: (1)

26

Defendants promised them approval of the loan modification on submission of the required documents; (2) Relying on defendants' statements, plaintiffs timely submitted all the requisite documents in reasonable belief that they would be able to protect their home from being foreclosed; and (3) Defendants thereby, induced plaintiffs to refrain from defending the foreclosure, which ultimately led to the sheriff's sale causing damages to plaintiffs. Consequently, plaintiffs advance that the facts as set forth clearly illustrate that plaintiffs acted to their detriment solely in reliance on the oral agreement made by Defendants. Therefore, the Court should apply the promissory estoppel doctrine to enforce the promise made by defendants in order to avoid injustice and to alleviate any unfairness or prejudice resulting from strict adherence to established legal principles of statute of frauds.

As an initial matter, plaintiff has failed to plead facts sufficient to support a claim of fraud. The undersigned agrees with Judge Goldsmith's analysis of a similar fraud claim in *Mrla v. Fed. Natn'l Mort. Assoc.*, 2016 WL 3924112 (E.D. Mich. 2016), which is equally applicable here. The *Mrla* opinion first observes that, although state law controls the elements of a common-law fraud claim, the Federal Rules of Procedure still dictate whether a fraud claim was sufficiently pleaded in federal court. *Id*. *8 (citing *Thomas v. Publishers Clearing House, Inc.*, 29 Fed.Appx. 319, 323 (6th Cir. 2002)). To satisfy Rule 9(b)'s particularity requirement, which governs fraud claims, a plaintiff "must provide sufficient

27

details regarding the time, place and content" of the allegedly fraudulent statement. *Id*. (quoting *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co*., 532 F.3d 496, 505 (6th Cir. 2008)).  In *Mrla,* under facts similar to those alleged here, the court concluded that the plaintiff's complaint failed to meet Rule 9(b)'s pleading threshold.  While the plaintiff in *Mrla* claimed that the defendants represented to her that they would not begin foreclosure proceedings while the parties actively pursued loan modification, the plaintiff failed to provide "any details regarding the time or place of the statements or otherwise point to any particular statement." *Id*. Likewise, the court in *Radske, supra*  reached a similar conclusion, based on a claim nearly identical to that in the present case and in *Mrla*:

> This single, vague allegation regarding the alleged fraudulent misrepresentation does not meet the exacting pleading requirement of Rule 9(b). Plaintiff does not specify the time, the place, or exact contents of the statement, nor does Plaintiff allege any facts from which it could be concluded that his reliance was reasonable. Thus, Plaintiff has failed to plausibly allege a claim of fraudulent misrepresentation and the claim will be dismissed.

*Radske*, at *6.  Plaintiffs' complaint in this case suffers from the same defects noted in both *Mrla* and  *Radske.*  And it too fails to meet the particularity requirements to state a fraud claim.

　　While the parties make arguments about promissory estoppel and the statute of frauds, there is no such claim in the complaint.  (Dkt. 1-2).  To the extent that

such a claim has been pleaded, it certainly appears to be barred by the statute of frauds, as explained in *Gallagher v. BAC Home Loans Servicing*, 2012 WL 1952349, *14 (W.D. Mich. 2012), where Judge Quist explained that, to the extent the plaintiffs were attempting to enforce an oral promise not contained in the parties' written agreement, their claim is barred by the statute of frauds. *Id*. (citing Mich. Comp. Laws § 566.132(2); *Crown Tech. Park v. D & N Bank, FSB*, 242 Mich.App. 538, 550 (2000) (stating that the statute of frauds applies to any claim seeking to enforce an oral promise against a financial institution, regardless of its label)). Thus, to the extent any such claim has been asserted, it fails as a matter of law under the statute of frauds.

    D.    <u>Count III - Slander of Title</u>

Defendants argue that, in order for plaintiffs to recover for either statutory or common law slander of title, they would have to establish that defendants acted with both falsity and malice and that plaintiffs have suffered special damages, "i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." *B & B Investment Group v. Gitler*, 229 Mich. App. 1, 8  (1998).  In other words, plaintiffs must establish that Defendants filed a false document with the intent to cause plaintiffs' injury. *Michigan Nat Bank & Trust Co v. Morren*, 194 Mich. App. 407, 412 (1992). "Malice may not be inferred merely from the filing of an invalid lien; the plaintiff

must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury." *Stanton v. Dachille*, 186 Mich. App. 247, 262 (1990). In this case, defendants contend that they properly foreclosed on the Mortgage and recorded a Sheriff's Deed and plaintiffs recite absolutely no basis in the Complaint to suggest malice or to otherwise state a claim for slander of title.

Plaintiffs do not respond to this issue in their response brief and in fact, conceded during oral argument that this claim should be dismissed. Thus, the undersigned recommends dismissal without further analysis.

In the alternative, this claim should be dismissed because it is indistinguishable from the slander of title claim brought, and rejected, in *Mrla*, *8.[5] Judge Goldsmith analyzed the slander of title claim as follows:

> Plaintiff has left Defendants and this Court to guess at which, if any, of Defendants' alleged actions constitute a slander of title. . . Defendants' only alleged action that maliciously communicated false information was the unspecified fraudulent misrepresentation that they were reviewing Plaintiff's loan modification review application "to induce Plaintiff to refrain from defending the foreclosure of her home." See Compl. ¶¶ 109-110. However, this false statement, even if it occurred, did not concern the legitimacy of Plaintiff's title. Plaintiff has, therefore, failed to state a claim for statutory or common law slander of title, and that count is dismissed.

*Id*. at *8. For these same reasons – a complete absence of any allegations in the

---

[5] Again, the complaint in *Mrla* was brought by David Lutz, plaintiffs' attorney in this case. The complaints are nearly identical.

complaint regarding the legitimacy of plaintiffs' title – the slander of title claim must fail.

    E.    <u>Count IV - Declaratory Relief/Unclean Hands</u>

Plaintiff's inclusion of a count premised on the doctrine of unclean hands is puzzling in that it is generally pled as an affirmative defense, not as a cause unto itself.  It is well-settled that courts will not allow a party with unclean hands to prevail on an equitable argument.  This doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief …"  *Stachnik v. Winkel*, 394 Mich. 375, 382 (1975) (quoting *Precision Instrument Mfg Co v. Automotive Maintenance Machinery Co*, 324 U.S. 806, 814 (1944)); *see also*, *Richards v. Tibaldi*, 272 Mich. App. 522, 537 (2006).  "The unclean hands doctrine states that a party seeking the aid of equity must come to court with clean hands.  *McFerren v. B & B Investment Group*, 253 Mich. App. 517, 522 (2002).

Defendants point out that here, it is plaintiffs, not defendants, who are seeking relief in equity.  Therefore, the unclean hands doctrine is not applicable.  Furthermore, "foreclosure by advertisement is not a judicial action . . . but rather is based on contract between the mortgagor and the mortgagee." *Cheff v. Edwards*, 203 Mich. App. 557, 560 (1994).  Because foreclosure by advertisement is not an equitable action, the doctrine of unclean hands is inapplicable here.  *See Mission*

31

*of Love v. Evangelist Hutchinson Ministries*, 2007 WL 1094424, at \*4 (Mich. App. 2007) (unclean hands doctrine held inapplicable because "defendants were not seeking relief in equity[;] [t]heir title obtained through the mortgage foreclosure was based in law (in a statute)[;] [t]hus, the unclean hands doctrine is inapplicable."). Likewise, defendants maintain that since they foreclosed by advertisement in this case and never brought a judicial action to foreclose, the doctrine of unclean hands cannot form the basis for declaratory relief in this case.

Plaintiffs do not address this issue in their response brief and identified no cases during the hearing to support this theory of recovery. As observed in the *Radske* opinion, several courts in this district have dismissed nearly identical claims:

> "[D]eclaratory relief is a remedy [ ], not a claim." *Mettler Walloon, L.L.C. v. Melrose Twp.*, 281 Mich. App. 184, 220 (Mich. Ct. App. 2008) (citations omitted). Similarly, the doctrine of unclean hands is not a claim; rather the "clean-hands doctrine closes the doors of equity to one tainted with inequitableness or bad faith to the matter in which he or she seeks relief, regardless of the improper behavior of the defendant." *Richards v. Tibaldi*, 272 Mich. App. 522, 537 (Mich. Ct. App. 2006).

*Radske*, at \*8 (quoting *McCann v. U.S. Bank, N.A.*, 873 F.Supp.2d 823, 848 (E.D. Mich. 2012); *see also Soto v. Wells Fargo Bank, N.A.*, 2012 WL 113534, at \*5 (E.D. Mich. Jan. 12, 2012) (Cohn, J.) (dismissing the identical claim and noting "the 'unclean hands' doctrine does not state a cause of action."); *Durr v. Bank of*

*Am., NA*, 2013 WL 6050140, at *7 (E.D. Mich. Nov. 15, 2003) ("A party seeking

equitable relief cannot have unclean hands.... However, the doctrine of unclean

hands cannot be applied against Defendants because foreclosure by advertisement

is not an equitable action."); *Mrla*, at *9 ("Because Defendants foreclosed by

advertisement and seek no equitable relief..., Plaintiff's unclean hands argument is

rejected."). There is no factual difference between the claim asserted by plaintiffs

here and those in *Radske*, *McCann*, *Mrla* or *Soto*. Thus, plaintiff's "unclean

hands" claim is not an actionable claim and should be dismissed.

    F.    <u>Count V - Preliminary Injunction</u>

    In Count V, plaintiffs request a "preliminary injunction" extending the

redemption period on the foreclosure sale. Contrary to plaintiffs' assertion that

they are likely to prevail on the merits of their claims, defendants argue that there

is no such likelihood at all, not least because plaintiffs' lack capacity to seek relief

from the sale. And, according to defendants, Michigan law does not permit such a

claim. To the contrary, injunctive relief is not a separate cause of action, but a

type of relief that the Court may grant. *See e.g.*, *Terlecki v. Stewart*, 278 Mich.

App. 644, 663 (2008) ("It is well settled that an injunction is an equitable remedy,

not an independent cause of action."). Defendants assert that plaintiffs cannot

prevail on their request for injunctive relief because all of their claims fail as a

matter of law. Moreover, defendants contend that plaintiffs have failed to allege

facts constituting imminent or irreparable harm.  On the other hand, defendants say they will be harmed if the foreclosure sale is not upheld despite plaintiffs having admittedly defaulted on their mortgage payments.

Plaintiffs did not address this argument in the response brief other than to assert that the loss of their home is irreparable damage.  During the hearing, plaintiffs' counsel conceded that dismissal of this claim was appropriate.  Thus, the undersigned recommends dismissal without any further analysis.  In the alternative, it is clear under Michigan law that a preliminary injunction is not a stand alone cause of action and the claim should be dismissed on this basis.  *See Terlecki*, *supra*.

G.     Count VI - Equitable Mortgage/Conversion to Judicial Foreclosure

Defendants argue that Mich. Comp. Laws § 600.3205c(8) does not provide a basis for the remedy sought by plaintiffs to convert the foreclosure by advertisement to a judicial foreclosure action.  As plaintiffs admit in their Complaint, this statute was repealed on June 30, 2014.  (Dkt. 1-2, Complaint, ¶ 120).  Regardless, given that the foreclosure is complete, the Sheriff's sale has already occurred, and the redemption period has already expired, Plaintiffs cannot now avail themselves of the remedies contained in Mich. Comp. Laws § 600.3205(c) in any case.  Accordingly, defendants maintain that plaintiffs fail to state a claim under Mich. Comp. Laws § 600.3205(c).  Furthermore, defendants

34

asserts that no basis exists for this Court to place an equitable mortgage on the property.

Plaintiffs contend, however, that, contrary to defendants' assertion that they are requesting relief under a repealed statute, plaintiffs are actually requesting that the instant foreclosure be converted to a judicial foreclosure despite the repeal of Mich. Comp. Laws § 600.3205(c)(8). Under Mich. Comp. Laws § 600.3205(c), a borrower who believed that a foreclosure on his/her home was being held in violation of the foreclosure by advertisement statute was provided with an avenue through which he or she could contest the foreclosure by filing an action to convert the foreclosure proceeding to a judicial foreclosure in the circuit court for the county where the mortgaged property was situated. Plaintiffs contend that when the Legislature repealed Mich. Comp. Laws § 600.3205(c), "it extinguished the only avenue of relief by way of a judicial foreclosure which a wronged borrower had and failed to provide any other similar recourse, leaving homeowners with no choice but to file actions in the Circuit Court to contest the foreclosure and request alternative types of relief for the wrongful foreclosures." (Plaintiffs' Response, Dkt. 15, Pg. ID 295). Thus, plaintiffs argue that they are legally entitled to a full, fair and proper evaluation of their case by this Court.

Plaintiff's argument fails. Faced with an identical claim, the court in *Radske, supra* held that the plaintiff's request to convert the foreclosure by

35

advertisement to a judicial foreclosure must be dismissed as a matter of law.

*Radske*, at *7.  Just as in *Radske*, the complaint here recognized that the statute

allowing the conversion of a pending foreclosure by advertisement into a judicial

foreclosure, Mich. Comp. Law § 600.3205(c), was repealed effective June 30,

2014.  The complaint further acknowledged that when the statute was repealed "it

extinguished the only avenue of relief by way of judicial foreclosure which a

wronged borrower had..." *Id*.  Thus, "as pled and recognized by Plaintiff in his

own complaint, any claim to convert the completed foreclosure by advertisement

into a judicial foreclosure has no plausible basis in law and must be dismissed."

*Id*.  The complaint here suffers from the same defects and this claim should be

dismissed.

  In *Radske*, the court also found the plaintiff's request for an equitable

mortgage to be implausible.  The plaintiff appeared to request an equitable

mortgage as a remedy for an alleged wrongful foreclosure.  The court there noted,

however, that no case law supported such a request, and thus rejected the claim for

equitable mortgage.  *Id*.  The Sixth Circuit has explained:

> An equitable mortgage is generally imposed when one
> party intended to grant a secured interest but the
> instrument actually transferred the property in total to the
> other party. *See Townsend v. Chase Manhattan Mortg.
> Corp.*, 254 Mich.App. 133, 657 N.W.2d 741, 744 n. 1
> (2002) (discussing the normal uses of equitable
> mortgages). Michigan law is clear that equitable

36

> mortgages are appropriate in circumstances where the underlying mortgage is void, particularly when one party received the benefits of the mortgage. *See Fair v. Moody*, No. 278906, 2008 WL 5382648 (Mich. Ct. App. Dec. 23, 2008) (holding that an equitable mortgage can exist where there are allegations of forged mortgage instruments); *In re Estate of Moukalled*, 269 Mich.App. 708, 714 N.W.2d 400, 407-09 (2006) (granting an equitable mortgage where a land contract, which purported to give a security interest in real property, was invalid under the Uniform Commercial Code).

*In re Sutter*, 665 F.3d 722, 728 (6th Cir. 2012).  Like the plaintiff in *Radske*, plaintiffs here have "made no allegations that the Mortgage was invalid, void, or forged and therefore there are no allegations that could plausibly support a claim for an 'equitable mortgage.'"  *Radske*, at *8; *see also Mrla*, at *10 ("Plaintiff has not pleaded facts concerning the parties' shared intent that would create a plausible claim that she is entitled to an equitable mortgage.  Indeed, her sole argument for the application of the doctrine appears to be the fact that she has "no recourse under [Mich. Comp. Laws §] 600.3205(c) as it has been repealed.  Because this is insufficient, her request for relief is dismissed.") (internal citation omitted).  Thus, just as in *Radske* and *Mrla*, plaintiffs' claim for an equitable mortgage must fail.

## H.   Good Faith and Fair Dealing

The plaintiffs' claim for breach of covenant of good faith and fair dealing also fails.  As defendants correctly point out, courts have concluded, innumerable

times that "Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing." *Radske*, at *5 (quoting *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 476 (2003) (citing Ulrich v. Fed. Land Bank of St. Paul, 192 Mich. App. 194, 197 (1991)); *see also Mrla*, at *7; *Garrow*, at *6. While plaintiffs' counsel did not concede to dismissal of this claim, he acknowledged that he had no case law to support this claim.  Given the holdings in *Radske*, *Mrla*, and *Garrow*, plaintiffs' good faith and fair dealing claim should be dismissed.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion for judgment on the pleadings be **GRANTED** in its entirety.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: December 7, 2016   s/Stephanie Dawkins Davis
           Stephanie Dawkins Davis
           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on December 7, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

      s/Tammy Hallwood
      Case Manager
      (810) 341-7887
      tammy_hallwood@mied.uscourts.gov